NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1587

AUTOMED TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

KNAPP LOGISTICS & AUTOMATION, INC.,

Defendant-Appellee,

and

KNAPP LOGISTIK AUTOMATION GMBH,

Defendant-Appellee.


John C. Herman, Duane Morris LLP, of Atlanta, Georgia, argued for Plaintiff-appellant.  With him on the brief was Ryan K. Walsh.  Of counsel on the brief was Lewis F. Gould, Jr., of Philadelphia, Pennsylvania.  Of counsel was Joseph A. Powers.

Steven D. Moore, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for defendants-appellees.  With him on the brief were John S. Pratt, Geoffrey K. Gavin, and Michael A. Bertelson.   Also on the brief were William F. Long and Russell A. Korn, Sutherland, Asbill & Brennan LLP, of Atlanta, Georgia, for defendant-appellee, Knapp Logistik Automation GmbH.  Of counsel was David A. Reed.

Appealed from:  United States District Court for the Northern District of Georgia

Judge William S. Duffey, Jr.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1587

AUTOMED TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

KNAPP LOGISTICS & AUTOMATION, INC.,

Defendant-Appellee,

and

KNAPP LOGISTIK AUTOMATION GMBH,

Defendant-Appellee.

———————————————

DECIDED:   May 31, 2007

———————————————

Before MAYER and RADER, <u>Circuit Judges</u> and GARBIS, <u>District Judge</u>.*

PER CURIAM.

Automed Technologies, Inc., ("Automed") appeals the final judgment of the United States District Court for the Northern District of Georgia, granting summary judgment of non-infringement in favor of Knapp Logistics & Automation, Inc., and Knapp Logistik Automation GmbH (collectively "Knapp").  <u>Automed Techs., Inc. v. Knapp Logistics & Automation, Inc.</u>, 1:04-CV-1152 (N.D. Ga. July 18, 2006).  We <u>affirm</u>.

---

*    Honorable Marvin J. Garbis, Senior District Judge, United States District Court for the District of Maryland, sitting by designation.

Automed owns U.S. Patent No. RE37,829 ("'829 patent"), which recites a method and apparatus for automatically filling prescription drug orders. The trial court construed the asserted independent claims[*] to require that the device for labeling prescription drug vials be "positioned under or after the vial filler." Automed Techs., Inc. v. Knapp Logistics & Automation, Inc., 1:04-CV-1152, slip op. at 50 (N.D. Ga. June 6, 2006) ("Claim Construction Order"). There is no dispute that under the trial court's claim construction, Knapp does not infringe. Accordingly, the only question before us is whether the trial court's construction was in error.

---

[*] At issue on appeal are independent claims 1, 13, 18, and 22. Claim 18 is representative, and it provides in pertinent part:

18. A system for automatically filling patient prescription orders, the system comprising:

a control system for receiving a patient's prescription order . . . ;

at least one prescription filling line operatively controlled by the control system including machine structure for automatically filling and labeling at least one discrete vial . . . the filling line machine structure including:

a vial-transport mechanism configured to automatically transport the at least one vial between at least a first position in which the empty vial is received by the vial-transport mechanism, another position in which the empty vial is transported to vial-filler apparatus and a further position in which the filled vial is transported to a vial accumulator;

the vial-filler apparatus is positioned to receive the empty vial transported by the vial-transport mechanism . . . ; and

vial-labeler apparatus positioned with respect to the filling line and including labeler apparatus configured to place a label including information on the vial surface;
. . . .

'829 patent, col. 16, ll. 35-67 (emphasis added).

Automed argues that because the asserted claims themselves do not explicitly provide a specific order in which vials are to be filled and labeled, the trial court improperly read a limitation into them from the specification and the prosecution history. We disagree. It is true that the claims alone are ambiguous as to order. However, when they are read in the context of the specification and the prosecution history, it is clear that labeling must occur after or during filling, but not before.

The specification provides: "The system . . . automatically fills one or more vials with one or more drugs, and then automatically labels and caps the vials containing drugs." '829 patent, col. 1, ll. 55-57 (emphasis added). Because the vials contain drugs when labeled, this strongly suggests that labeling must occur after or during filling. The specification then makes clear that the "labeler 28 can be located downstream of the vial filler 26 as shown or it can preferably be located under the vial filler 26 to label vials during or immediately after filling." Id. at col. 4, ll. 1-5 (emphasis added). If labeling may occur only after or during filling, a logical implication is that it may not occur before filling.

Finally, the specification discusses the software and the equipment providing for quality control. Id. at cols. 7-13. It makes clear that the quality control procedures occur sequentially, in the described order, with no suggestion that the disclosed steps may occur in alternative orders. E.g., id. at col. 10, ll. 12-22 ("If the unscrambler is ready to respond, then a determination is made as to whether a vial has been successfully dropped. . . . [I]f a vial has been successfully dropped, then the prescription is assigned a status of 'waiting for filler' and a check is then made of the filler 26."). Logically, it makes sense that the procedures are described as such, because most tasks are

necessarily performed at a specific time, in a specific order relative to other tasks (e.g., a vial cannot be filled before it has been dropped, and it cannot be capped until after it is filled). With respect to filling and labeling, the specification states: "If it is determined that a prescription has been successfully filled, <u>then</u> a command is issued to the labeler to apply a label to the vial. <u>Then</u> the prescription is assigned a status of 'waiting for label' and the check of the filler is terminated." <u>Id.</u> at col. 10, ll. 42-46 (emphasis added). Given the complexity of the device at issue, the state of computer and other relevant technology in 1990 (when the original application was filed), and the disclosure in the specification, we cannot simply presume that these tasks, which were explicitly described as occurring in a specific sequential order, could have readily been carried out in alternative orders. Moreover, Automed cites nothing in the record demonstrating that one having ordinary skill in the art would have recognized the filling and labeling steps as freely interchangeable.

In sum, there is no explicit disclosure in the patent of an invention in which labeling occurs before filling, and there is considerable evidence suggesting that labeling before filling falls outside the scope of the invention. Nevertheless, because the portions of the specification discussed above purport to be describing a non-exhaustive set of embodiments, the claim language and the specification, without more, may have been insufficient to support the trial court's claim construction. However, when we evaluate the prosecution history, it becomes evident that labeling before filling is indeed not encompassed by the claims.

In prosecuting the continuation reissue application, Automed amended claim 25 to provide that labeling could occur "before or after" filling. The examiner rejected this

amendment as new matter, citing column 4, lines 1-3 of the specification which "only disclose that the labeling can occur during or after the filling process." Claim Construction Order, slip op. at 39. Automed then withdrew any reference in claim 25 to labeling before filling, and requested that the rejection be withdrawn. Id. In so doing, Automed conceded that its invention did not embody filling lines in which the labeler was placed before the filler. Even if this action does not constitute a clear and unmistakable statement of disavowal giving rise to prosecution history estoppel as to the asserted claims, it would, nevertheless, be inconsistent in light of the concession to construe them in a manner that encompassed labeling before filling.

Automed cites to claim 5 to support its argument that a labeler may be placed before the filler. However, claim 5 is consistent with the trial court's finding that a labeler positioned before the filler is outside the scope of the invention. It recites "a labeler positioned . . . downstream of [i.e., after] said filler." '829 patent, col. 14, ll. 52-54 (emphasis added). We also find no merit in Automed's argument that the "in no particular order" language of claim 31 somehow diminishes the correctness of the trial court's construction. Claim 31 was filed with claim 25, yet it was not rejected by the examiner as new matter. Accordingly, even if it might otherwise have been permissible to read claim 31 as claiming a labeler positioned before the filler, it cannot be so understood in view of the prosecution history surrounding claim 25.